UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>PATRICK HIRL ADKINS,<br><br>　　　　　　　Defendant. | CR. 19-50011-JLV<br><br><br>ORDER |

**INTRODUCTION**

Defendant Patrick Hirl Adkins, appearing *pro se*, filed a motion for compassionate release.  (Docket 42).  Pursuant to the October 21, 2020, Amended Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Adkins' motion.  (Dockets 46-47, 49, 52 & 54).  For the reasons stated below, defendant's motion is granted.

**STANDING ORDER 20-06**

Amended Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(c)(l)(A), in the wake of the spread of

---

[1]See https://www.sdd.uscourts.gov/socraa ("ASO 20-06").

the COVID-19 virus into the federal prison system." (ASO 20-06 at p. 1).

Under the order, the FPD is automatically "appointed to represent all

defendants in criminal cases: (a) who previously were determined to be entitled

to appointment of counsel or who are now indigent; and (b) who may be eligible

to seek compassionate release under the First Step Act." Id. ¶ 1. The initial

step for the FPD is to

> communicate a recommendation to inmates interested in
> compassionate release that they immediately submit requests for
> compassionate release to the warden of the facility in which they are
> detained, if they have not done so already. These communications
> will include the recommendation that the prisoner describe their
> proposed release plan.

Id. ¶ 2.

By the standing order, the FPD and the United States Attorney for the

District of South Dakota are "to place [the defendant] into one of four

categories[.]" Id. at p. 2 ¶ 4. Those categories are:

> a. High Priority Cases where there exists some combination of:
> (i) medical issues that correspond to the categories outlined in
> the commentary to U.S.S.G. § l.B.1.13; (ii) recognized COVID-
> 19 risk factors in the inmate's medical history; and/or
> (iii) imprisonment in a federal facility known to have a serious
> COVID-19 outbreak in its population. . . .

> b. Intermediate Priority Cases where identified medical issues
> and/or COVID-19 risk factors and/or institutional concerns
> are less extreme than High Priority Cases.

> c. Low Priority Cases where there are no identifiable medical
> issues or COVID-19 risk factors.

> d. Unknown Risk Cases where there is a lack of sufficient
> information to categorize the request for compassionate
> release.

Id.  The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office."  Id.

### MR. ADKINS' CLASSIFICATION

On December 3, 2020, the FPD and the U.S. Attorney filed a notice designating Mr. Adkins as an Intermediate Priority case.  (Docket 43).

### FACTUAL BACKGROUND

On October 1, 2019, Mr. Adkins was sentenced to a term of imprisonment of 60 months for attempted receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1).  (Dockets 40 & 41). Based on a presentence investigation report, Mr. Adkins' advisory guideline range was 37 to 46 months of imprisonment based on a total offense level of 21 and his criminal history category I; however, the offense carried a minimum mandatory sentence of five years.  (Docket 35 ¶ 45)).  The court sentenced Mr. Adkins to the mandated minimum term of 60 months followed by five years of supervised release. (Docket 41 at pp. 2-3).

Mr. Adkins is currently an inmate at FCI Englewood, a low security federal correctional institution, in Littleton, Colorado.  (Docket 42 at p. 1); Fed. Bureau Prisons, https://www.bop.gov.locations/institutions/eng/ (last checked Feb. 8, 2021).  The total inmate population at FCI Englewood is 921 persons.  Id.  As of February 16, 2021, there were two active COVID-19 cases among inmates, zero among staff, zero inmate deaths as a result of COVID-19, and 663 inmates and 70 staff had recovered at FCI Englewood.  https://www.

3

bop.gov/coronavirus/ (last checked Feb. 16, 2021).  Based on these statistics

and assuming a static population, over 72 percent of the inmates at FCI

Englewood have contracted COVID-19, but none have died as a result.

Mr. Adkins has a scheduled release date of August 5, 2022.  (Docket 46

at p. 146); <u>see also</u> https://www. bop.gov/inmateloc/ (last checked Feb. 9,

2021).  As of December 1, 2020, Mr. Adkins served approximately 37.2 percent

of his sentence and, under his current status in the Bureau of Prisons ("BOP"),

Mr. Adkins' home detention eligibility date is February 5, 2022.  (Docket 46 at

pp. 147-48). Mr. Adkins is currently 50 years old.  <u>Id.</u> at 145.

## MR. ADKINS' MOTION

Mr. Adkins' *pro se* motion seeks compassionate release on the basis of

extraordinary and compelling reasons in light of his many health conditions

during the COVID-19 pandemic.  (Docket 42).  Mr. Adkins' medical records

confirm the following medical conditions, among several others:

- Type 2 diabetes mellitus with diabetic neuropathy.  (Docket 46 at p. 45);

- Hyperlipidemia.  <u>Id.</u>;

- Alcohol use disorder.  <u>Id.</u>;

- Major depressive disorder.  <u>Id.</u>;

- Retinopathy (diabetic).  <u>Id.</u>;

- Essential (primary) hypertension.  <u>Id.</u>

- Abnormal electrocardiogram.[2] Id. at pp. 46, 72;

- Overweight (BMI 29.4).  See id. at pp. 5, 101, 105.

Mr. Adkins' prescription regimen currently includes insulin for type 2 diabetes, citalopram for major depressive disorder, oxcarbazepine for neuropathy, lisinopril for hypertension, metformin for type 2 diabetes, and atorvastatin for hyperlipidemia.  Id. at pp. 94-95.  Additionally, Mr. Adkins receives avastin injections for bilateral macular edema and bilateral diabetic retinopathy.  Id. at pp. 90, 96, 135 & 139.

In a supplement to the *pro se* motion, defense counsel argues the unprecedented COVID-19 pandemic along with Mr. Adkins' serious health conditions place him at risk of developing serious complications from COVID-19 and are extraordinary and compelling reasons warranting his compassionate release.  (Docket 49 at pp. 5-9).  Counsel asserts the virus spread more quickly through the federal prison system and the infection rate in the Bureau of Prisons is higher than the general public.  Id. at pp. 5-6. Because Mr. Adkins has type 2 diabetes, a condition identified by the Centers for Disease Control and Prevention ("CDC") that increases the risk of severe

---

[2]Chest X-rays taken on November 12, 2019, indicated no acute cardiopulmonary disease, lungs were clear, no pleural effusions and heart size was normal.  (Docket 46, at p. 74).

illness from COVID-19,[3] and essential (primary) hypertension (high blood pressure), a condition identified as potentially increasing his risk of a severe illness along with several other conditions, counsel urges the court to grant the motion.  Id. at pp. 8-13.  Addressing the 18 U.S.C. § 3553(a) factors, counsel states Mr. Adkins has no pre-offense criminality, was caught in a sting operation involving a fictional victim, has accepted responsibility for his actions, is not a danger to the community, and has had no disciplinary issues while in custody.  Id. at pp. 13-14.  If released, Mr. Adkins plans to live with his wife in Rapid City, South Dakota.  Id. at p. 14.

## UNITED STATES' OPPOSITION

The government opposes Mr. Adkins' motion for compassionate release. (Docket 52).  The government argues the motion should be denied because Mr. Adkins' medical conditions do not prevent him from providing self-care in the correctional facility, the Bureau of Prisons (BOP) made substantial changes in its operations and the cases at FCI Englewood are declining.  Id. at p. 6.  The government acknowledges the Department of Justice's stance that "during the COVID-19 pandemic, conditions like Type 2 Diabetes, which the CDC has determined increase risk of severe illness due to COVID-19, present 'a serious

---

[3]Counsel also suggests that Mr. Adkins has a history of smoking, which is a condition that the CDC has identified as increasing the risk from COVID-19.  Docket 49 at pp. 8-9. Mr. Adkins' medical records, however, reference his smoking status as "[n]ever smoker."  See, e.g., Docket 46 at pp. 135, 139. The court does not resolve this discrepancy because it is not necessary to the court's determination.

6

physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility . . . .' " <u>Id.</u>  However, the government argues the BOP is actively distributing COVID-19 vaccines, which would reduce the risk.  <u>See id.</u>

Turning to the 18 U.S.C. § 3553(a) factors, the government argues Mr. Adkins failed to demonstrate he is not a danger to public safety or otherwise merits release.  <u>Id.</u> at 9.  The government submits Mr. Adkins' offense involved attempting to make sexual contact with a juvenile, conduct which was part of a law enforcement sting operation.  <u>Id.</u>  The government asserts Mr. Adkins was specific and explicit regarding his sexual intentions toward the juvenile.  <u>Id.</u>  As to the other 3553(a) factors, the government asserts these also counsel against release, suggesting Mr. Adkins has not served enough of his mandatory minimum sentence, the nature of his offense does not warrant a reduction, releasing him does not promote respect for the law or provide just punishment for the offense and Mr. Adkins is able to receive medical care while incarcerated.  <u>Id.</u> at pp. 9-11.  Finally, the government argues that if Mr. Adkins is released, the court should impose a term of home confinement as a condition of his supervised release.  <u>Id.</u> at pp. 12-13.

In reply, Mr. Adkins argues the only real dispute between the parties is whether the § 3553(a) factors warrant release.  (Docket 54 at p. 1).  Mr. Adkins contends his case is similar to others where the court has granted release citing <u>United States v. Magnuson</u>, CR. 15-50095, 2020 WL 7318109 (D.S.D.

Dec. 11, 2020); and United States v. Hosek, CR. 16-50111, 2020 WL 7318107

(D.S.D. Dec. 11, 2020).  Id. at p. 6.  Finally, Mr. Adkins argues the offense

involved a fictional victim, was aberrant behavior in an otherwise normal life

and Mr. Adkins is remorseful for his conduct.  Id.

## ANALYSIS

### Administrative Exhaustion

Section 3582(c) permits the district court to consider a prisoner's request

for compassionate release after he exhausts the administrative remedies

mandated by the statute.

> [T]he court . . . upon motion of the defendant after the defendant
> has fully exhausted all administrative rights to appeal a failure of
> the Bureau of Prisons to bring a motion on the defendant's behalf or
> the lapse of 30 days from the receipt of such a request by the warden
> of the defendant's facility, whichever is earlier, may reduce the term
> of imprisonment (and may impose a term of probation or supervised
> release with or without conditions that does not exceed the unserved
> portion of the original term of imprisonment), after considering the
> factors set forth in section 3553(a) to the extent that they are
> applicable, if it finds that . . . extraordinary and compelling reasons
> warrant such a reduction . . . and that such a reduction is consistent
> with the applicable policy statements issued by the Sentencing
> Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The court finds Mr. Adkins exhausted the administrative procedure

provision contemplated by § 3582(c)(1)(A).[4]  Mr. Adkins submitted a written

request to Warden Greilick requesting compassionate release.  (Docket 42 at

_____

[4]The government does not dispute administrative exhaustion has been
satisfied.  (Docket 52 at p. 2).

pp. 4-10).  Warden Greilick denied his request by letter dated April 20, 2020.

Id. at p. 3.  Accordingly, Mr. Adkins' motion may be addressed on its merits.

### Extraordinary and Compelling Reasons

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release."  United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020).  That task was left to the United States Sentencing Commission.  "[I]n promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) . . . [the Sentencing Commission] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  28 U.S.C. § 994(t).

Prior to the First Step Act, the Sentencing Commission established four categories for "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  28 U.S.C. § 994(t).  Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems to be extraordinary and compelling.  U.S.S.G. § 1B1.13 comment. n.1.  The four categories have not been updated since December 2018 when the First Step Act became law.[5]

_____

[5]The United States Sentencing Commission lacks a quorum and "currently has only two voting members, two short of the four it needs to amend the [U.S.S.G.]."  United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020) (references omitted).

The United States Courts of Appeals for the Second, Fourth, Sixth and Seventh Circuits have addressed the court's authority under the First Step Act.[6]  See United States v. Brooker, 976 F.3d 228 (2d. Cir. 2020); McCoy, 981 F.3d at 271; United States v. Jones, 980 F.3d 1098 (6th Cir. 2020); and United States v. Gunn, 980 F.3d 1178 (7th Cir. 2020).

The Second Circuit identified the question at the heart of these cases is "whether the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling,' or whether that power remains exclusively with the BOP Director as stated in Application Note 1(D)."  Brooker, 976 F.3d at 234.  The Second Circuit concluded "that, despite Application Note 1(D), the First Step Act freed district courts to exercise their discretion in determining what are extraordinary circumstances."  Id.  The court held the language of U.S.S.G. § 1B1.13 "is clearly outdated and cannot be fully applicable."  Id. at 235. "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."  Id. at 237; see also Gunn, 980 F.3d at

---

[6]The United States Court of Appeals for the Eighth Circuit had two clear opportunities to address this issue but declined to do so.  United States v. Rodd, 966 F.3d 740 (8th Cir. July 16, 2020) and United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. July 31, 2020).

1180 (agreeing with the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion"); Jones, 980 F.3d at 1111 ("In cases where incarcerated persons file motions for compassionate release, federal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); McCoy, 981 F.3d at 283 ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction.").

The court retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." Brooker, 976 F.3d at 237. See also McCoy, 981 F.3d at 284 (same); Jones, 980 F.3d at 1111 (same); Gunn, 980 F.3d at 1180 (same). The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.

Turning to that task, medical records substantiate Mr. Adkins' multiple, serious health conditions as identified above. Conditions such as type 2

11

diabetes are included on the CDC's list of risk-increasing conditions.[7]  See
People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention,
https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-
with-medical-conditions.html (last updated December 29, 2020).  Regardless of
age, such conditions increase the risk of severe illness from COVID-19.  Id.  Mr.
Adkins also has conditions identified by the CDC that potentially increase the
risk of severe illness from COVID-19, including essential (primary)
hypertension and being overweight.[8]  Additionally, it is also instructive that
CDC guidance explains "[t]he more underlying medical conditions someone
has, the greater their risk is for severe illness from COVID-19."  See id.  Mr.
Adkins has other notable underlying conditions as well including some that are
not identified on the CDC's list, such as hyperlipidemia, alcohol use disorder,
major depressive disorder, and retinopathy.

_____

[7]The CDC indicates adults of any age *are* at increased risk of severe
illness from COVID-19 if they have certain conditions, including cancer,
chronic kidney disease, COPD, Down's syndrome, heart conditions (such as
heart failure, coronary artery disease, or cardiomyopathies), immuno-
compromised state from solid organ transplant, obesity, sickle cell disease,
smoking and type 2 diabetes.  See People with Certain Medical Conditions,
https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-
with-medical-conditions.html (last updated December 29, 2020).

[8]The CDC identifies the following conditions as ones that *might* increase
the risk from COVID-19: moderate to severe asthma, cerebrovascular disease,
cystic fibrosis, hypertension, neurologic conditions, overweight, liver disease,
pulmonary fibrosis, type 1 diabetes, and several others.  Id.

As noted by defense counsel, Mr. Adkins' medical conditions are similar in risk and seriousness to other defendants who have been granted compassionate release by this court.  See United States v. Eck, CR. 18-50058, 2020 WL 7390516 at *2 (D.S.D. Dec. 16, 2020) (noting conditions of type 2 diabetes, hyperlipidemia, hypertension, and asthma); United States v. Gravens, CR. 13-50101, 2020 WL 7390514 at *2 (D.S.D. Dec. 16, 2020) (noting conditions of hypertension, chronic obstructive pulmonary disease, and hyperlipidemia); United States v. Hosek, CR. 16-50111, 2020 WL 7318107 at *2 (D.S.D. Dec. 11, 2020) (noting conditions of affective mood disorder, chronic pain, kidney stones, insomnia, and family history of heart disease, cancer, and auto-immune deficiency); United States v. Magnuson, CR. 15-50095, 2020 WL 7318109 at *2 (D.S.D. Dec. 11, 2020) (noting conditions of type 2 diabetes, obesity, hyperlipidemia, hypertension, and depressive disorder).

Mr. Adkins' age of 50 is another factor the court considers.  The CDC recognizes the risk of severe illness as a result of COVID-19 increases with age with older adults at higher risk.  See Older Adults, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last checked Feb. 9, 2021).  A person aged 50-64 is four times more likely to require hospitalization than a person under the age of 29, though the greatest risk is for those 85 and older.  Id.

In conjunction with his age and serious health conditions, Mr. Adkins' incarceration exacerbates the risk of infection.  Though currently there are few

13

active cases of COVID-19 among inmates at FCI Englewood, that has not previously been the case.  See BOP: COVID-19 Update, https://www.bop.gov/ coronavirus/ (last accessed  Feb. 9, 2021).  The rate of COVID-19 infection among inmates at FCI Englewood is high overall.  Of its 921 inmate-population, 664 inmates have recovered.  Id.

The CDC has identified factors that increase community spread of COVID-19 and individual risk, including crowded situations, enclosed spaces and close or physical contact among people, especially for longer durations. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/ people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2F www.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fcovid-data%2Finvestigations-discovery%2Fhospitalization-underlying-medical-conditions.html (last updated Oct. 16, 2020).  The court recognizes the efforts BOP has taken to prevent and mitigate outbreaks.  See BOP Modified Operations, https://www.bop.gov/ coronavirus/covid19_status.jsp (last updated Nov. 25, 2020).  Nevertheless, despite the efforts to slow the spread of COVID-19 in prisons, the practical reality is many of the factors increasing community spread and individual risk of exposure to the virus are simply unavoidable in a prison setting.

Nor can the court ignore the potential of infection when the risk for Mr. Adkins is significant.  The new strains and variants of COVID-19 only add to the risk and uncertainty.  See New COVID-19 Variants, https://www.cdc.gov/ coronavirus/2019-ncov/transmission/vairant.html (updated Feb. 2, 2021) (last

14

checked Feb. 9, 2021).  According to the CDC, "[m]ultiple variants of the virus that causes COVID-19 have been documented in the United States and globally during this pandemic."  Id.  "So far, studies suggest that the antibodies generated through vaccination with currently authorized vaccines recognize these variants."  Id.  However, more investigation and studies are underway. Id.

The court recognizes the BOP's recent implementation of a COVID-19 vaccination program.  As of February 9, 2021, 40,105 doses have been administered to the BOP system-wide but no vaccinations have occurred to date at FCI Englewood.  See BOP: COVID-19 Update, https://www.bop.gov/ coronavirus/ (last checked Feb. 9, 2021).  Therefore, this potential risk mitigating factor is not present here.

Based on a careful review of his medical records detailing the conditions he faces, the court finds Mr. Adkins' major health issues are chronic.  That is, his conditions will only persist and likely worsen over time.  During the COVID-19 pandemic, Mr. Adkins' conditions significantly diminish his ability to provide self-care within the environment of a correctional facility, putting him at risk of severe illness—and even death—should he contract the virus.  The court finds Mr. Adkins' chronic and severe medical conditions make him especially vulnerable to COVID-19, even compared to other individuals incarcerated in FCI Englewood or other BOP facilities.

15

The court finds Mr. Adkins meets his burden of proof and presents extraordinary and compelling reasons under § 3582(c)(1)(A)(i).

**3553(a) Factors**

Against these findings, the court must consider if compassionate release comports with the § 3553(a) factors.  See 18 U.S.C. § 3582(c)(1)(A).  These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from further crimes of the defendant, among others.  Id. § 3553(a)(1)-(7).

In Mr. Adkins' case, the nature and circumstances of the offense—attempted receipt of child pornography—is serious.  Id. § 3553(a)(1).  "[T]he history and characteristics of the defendant" requires the court to consider the defendant as a whole person.  Koon v. United States, 518 U.S. 81, 113 (1996).  Other than misdemeanors involving disorderly conduct and driving under the influence at age 33, both of which resulted in suspended sentences, Mr. Adkins has no prior criminal history.  (Docket 35 ¶¶ 26-27).  He had no scorable criminal history points, placing him in criminal history category I.  Id. at ¶ 29.  He has not had any disciplinary violations while in prison.  (Docket 46 at p. 144).  To his credit, Mr. Adkins has participated in numerous educational courses and received his GED while in custody.  Id. at p. 145.  The court is also

16

informed Mr. Adkins completed the residential drug abuse program (RDAP) on January 8, 2021.

The court is cognizant of the government's concern that Mr. Adkins has not served a significant portion of his sentence and that his early release does not reflect the seriousness of or provide just punishment for the offense. These concerns are well taken. The court sentenced Mr. Adkins to the minimum mandatory term of 60 months imprisonment. But for that requirement, his guideline range was 37 to 46 months. (Docket 35 ¶ 45). Mr. Adkins has been in continuous custody since May 9, 2019, which is approximately 21 months, excluding any earned good credit time which he has accumulated. (Docket 46 at p. 148). The court is concerned about the serious nature of the offense committed by Mr. Adkins.

On careful balance of the § 3553(a) factors, however, the court finds compassionate release is appropriate. The court concludes that Mr. Adkins' current time in custody is sufficient to adequately deter him from future offenses. Mr. Adkins will be on supervised release for five years and the special conditions of his supervision require him to comply with the Sex Offender Registration and Notification Act. (Docket 41 at p. 3). The government's concerns can be addressed through conditions of release that impose a period of home confinement. This will further limit Mr. Adkins' liberty and he will face harsh consequences if he violates those conditions or the other standard and special conditions of his supervised release.

17

**<u>Home Confinement</u>**

The court does not have authority to modify the defendant's sentence to home confinement.  <u>United States v. Amarrah</u>, 458 F. Supp.3d 611, 620  (E.D. Mich. 2020).  The court does, however, retain the authority to reduce Mr. Adkins' sentence to time served and impose a condition of home detention as a condition of his supervised release.  <u>See</u> <u>id.</u>  The court concludes that a 12-month period of home confinement in lieu of imprisonment is sufficient to closely monitor Mr. Adkins in the time immediately following his release.  Mr. Adkins will remain on supervised release for five years, subject to the mandatory, standard and special conditions of supervised release imposed in the original sentence, as well as the additional condition of home confinement. <u>See</u> Docket 41.

## ORDER

Good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 42) is granted.

IT IS FURTHER ORDERD that the defendant's sentence of imprisonment is reduced to time served.

IT IS FURTHER ORDERED that upon his release, Mr. Adkins shall reside at his home in Rapid City, South Dakota.

18

IT IS FURTHER ORDERED that within 72 hours of release from the custody of the BOP, Mr. Adkins must report, by telephone, 605-339-5920, to the United States Probation Office for the District of South Dakota in the United States Courthouse, 515 Ninth Street, Room 203, Rapid City, South Dakota 57701.

IT IS FURTHER ORDERED that Mr. Adkins shall be on supervised release for five years, subject to the mandatory, standard and special conditions of supervision imposed in the original sentence of October 1, 2019. (Docket 42 at pp. 3-5).

IT IS FURTHER ORDERED that Mr. Adkins shall be subject to home confinement for a period of 12 months, beginning immediately upon release from imprisonment, and comply with the terms of the Home Confinement Participant Agreement as an additional special condition of supervision.

IT IS FURTHER ORDERED that the United States Probation Office shall prepare an amended judgment consistent with this order.

IT IS FURTHER ORDERED that the Clerk of Court shall deliver a copy of this order to the United States Probation Office and the United States Marshals Service.

Dated February 16, 2021.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE

19